UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES G. PAULSEN, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>– against –<br><br>833 CENTRAL OWNERS CORP.<br><br>Respondent. | MEMORANDUM & ORDER<br><br>12-CV-5502 |

**JACK B. WEINSTEIN, Senior United States District Judge:**

## I. Introduction

James Paulsen, regional director of Region 29 of the National Labor Relations Board ("Board"), seeks a preliminary injunction pursuant to section 10(j) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 160(j).

An Administrative Law Judge ("ALJ"), after a hearing, found on September 14, 2012 that respondent 833 Central Owners Corporation threatened retaliation, and then discharged its employee, Ezra Shikarchy, because of his union activities and in violation of his rights under Section 7 of the Act. *See* Mem. of P. & A. in Supp. of Pet. for Prelim. Inj. Under Sec. 10(j) of the Nat'l Labor Relations Bd. ("Pet. P. & A."), CM/ECF No. 3, at 3. The ALJ ordered respondent, within fourteen days of his decision, to cease and desist from interfering with the rights of its employees to engage in protected union activities and to reinstate Shikarchy to his former position or a substantially equivalent position. *Id*. Respondent filed an appeal with the Board on October 12, 2012. *Id*.

1

Pending a final ruling by the Board on respondent's appeal, petitioner seeks to freeze the status quo as it existed before the initiation of any alleged unfair labor practices by respondent. The injunctive relief requested by the petitioner is for an order (1) halting respondent from taking actions adverse to union activity protected by the NLRA, and (2) reinstating terminated employee Shikarchy to his former job, posting copies of the order in locations for respondent's employees to see the order, and requiring respondent to file with the court an affidavit affirming its compliance with the order. *See* Pet. P. & A. at 25; *see also* Order to Show Cause Hr'g Tr. ("Show Cause Tr.") 84, Nov. 30, 2012 ("MR. BOKDE [for petitioner]: Specifically, we only want you to reinstate Mr. Shikarchy and for respondent to cease threatening and suspending and terminating employees for participating in collective bargaining.").

For the reasons stated below, petitioner's request for an injunction pursuant to section 10(j) is granted. Entry of the injunction shall be stayed for ten days to allow respondent to seek a further stay in the Court of Appeals for the Second Circuit and to provide for an orderly reinstatement of Shikarchy to his former position.

## II. Facts and Procedural History

The following facts are drawn from the record of the administrative hearing before ALJ William Nelson Cates on May 7 and 8, 2012 and testimony proffered at a hearing on petitioner's motion before the court on November 30, 2012.

Beginning in February 2010, Shikarchy had been employed as a "super" engaged in assisting tenants at respondent's premises, 833 Central Avenue, Far Rockaway, New York (the "Premises"). *See* Pet. P. & A. at 4. Shikarchy, while employed by respondent, was provided an apartment on the Premises. Tr. of Admin. Hr'g before ALJ Cates ("Admin. Tr.") 126, May 7-8, 2012, CM/ECF No. 13-1 & 13-2.

Since 2003, Local 621 of the United Workers of America (the "Union"), has represented a unit of seven full-time and regular part-time doormen, porters, handymen, and supers employed by respondent. Pet. P. & A. at 2, 4; Show Cause Tr. 35. The Union and respondent are currently involved in negotiations for a new collective bargaining agreement. Show Cause Tr. 65-66. Their most recent agreement, which had a term of one year, expired in November 2010. *Id.*

Shikarchy was hired as the super for the Premises in February 2010. Admin. Tr. 125. After he began supporting unionization of respondent's employees and their demands for increased wages in the summer of 2011, he was told by respondent to stop. He refused. Admin. Hr'g 130; *see also, e.g.*, Pet. P. & A., Ex. 1, Decision of ALJ in Case No. 29-CA-70910, Sept. 4, 2012 ("ALJ Decision"), CM/ECF No. 3, at 13 ("Shikarchy credibly testified . . . that Friedman on three or four occasions told him either in person or on the telephone he better drop his grievance against Friedman or . . . he would be fired."). The Union filed a grievance on Shikarchy's behalf in August 2011 related to respondent's alleged harassment of Shikarchy. Pet. P. & A. at 5-6.

Respondent suspended Shikarchy on October 27, 2011 and fired him on December 13, 2011. *Id.* at 8, 10. It hired a replacement super in early 2012, nearly two months after firing Shikarchy. Show Cause Tr. 71-72. Like Shikarchy, the replacement super lives in an apartment on the Premises provided by respondent. *Id.* at 72-73. He lives there with his wife. *Id.* at 74.

In connection with Shikarchy's suspension and termination, the Union filed an unfair labor practice charge against respondent on January 15, 2012 and an amended charge on January 30, 2012, alleging violations of the Act. Pet. P. & A. at 2.

Following an investigation, the Board issued a complaint and notice of hearing on February 21, 2012. *Id.* A hearing was held before ALJ Cates in May 2012. *Id.* at 3. On

3

September 14, 2012 the ALJ issued a decision resolving credibility against respondent and finding that respondent committed unfair labor practices as charged. *Id*.

Respondent filed "Exceptions" to the ALJ's decision on October 12, 2012; a brief in opposition was filed on October 26, 2012. *Id*. The case remains undecided by the Board. It is estimated that it will not be decided by the Board for six or more months. Show Cause Tr. 7 (petitioner estimated it would take the Board "anywhere from six to nine months" to rule "on a case like this that raises no novel issues" and is "simply a determination of the evidence").

On November 6, 2012, in this court, petitioner sought a preliminary injunction.

### III. Section 10(j)

Section 10(j) grants the Board the power, "upon issuance of a complaint . . . , charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court . . . for *appropriate temporary relief* or restraining order." 29 U.S.C. § 160(j) (emphasis added).

The Court of Appeals for the Second Circuit has adopted a two-part test for determining whether temporary relief is appropriate. "First, the [district] court must find reasonable cause to believe that unfair labor practices have been committed. Second, the court must find that the requested relief is just and proper." *Hoffman v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 364-65 (2d Cir. 2001).

#### A. Reasonable Cause

Petitioner must first make a showing of reasonable cause to believe that an unfair labor practice has occurred. Proving an actual unfair labor practice is not required. *See Kaynard v. Mego Corp.*, 633 F.2d 1026, 1032-33 (2d Cir. 1980). The petitioner need only come forward with evidence "sufficient to spell out the likelihood of violation." *Danielson v. Joint Bd. of Coat,*

4

*Suit and Allied Garment Workers' Union*, 494 F.2d 1230, 1243 (2d Cir. 1974) (internal quotations omitted). Considerable deference is given to the Board's factual and legal arguments in a 10(j) proceeding. *Inn Credible Caterers, Ltd.*, 247 F.3d at 365; *Mego Corp.*, 633 F.2d at 1031 ("[T]he Regional Director's version of facts should be sustained if within the range of rationality."). The Board's legal and factual arguments must be "fatally flawed" for the court to decline to grant relief. *Silverman v. Major League Baseball Players Relations Comm., Inc.*, 67 F.3d 1054, 1059 (2d Cir. 1995)

It is not contested that the court can reasonably conclude that an unfair labor practice has been committed by respondent. *See* Mem. of L. in Opp. to Pet. Mot. for 10(j) Injunctive Relief, CM/ECF No. 12, at 5 n.3 ("Respondent will focus their arguments on the issue that the requested relief sought by the Board is not 'just and proper.'"). While there may be a serious issue with respect to whether Shikarchy was terminated by respondent for participation in protected activities or his inadequacy as a super, that issue has already been decided by the ALJ and there is no reason for this court to re-decide it. Found by the ALJ was that respondent unlawfully threatened, suspended, and discharged Shikarchy in violation of the Act. *See* ALJ Decision at 17 ("The credited evidence clearly establishes the Company's proffered reasons for warning, suspending, and discharging Shikarchy were pretextual—that is, they were not in fact relied upon.").

**B. Just and Proper**

Respondent argues that an injunction is improper under the second prong—i.e., that the requested relief is not just and proper.

The decision to grant a section 10(j) petition is guided by traditional rules of equity. *See Inn Credible Caterers, Ltd.*, 247 F.3d at 265. Inquiry will be made into the likelihood of

5

irreparable harm, preservation of the status quo, and the respective hardships faced by the parties. *Silverman v. Imperia Foods, Inc.*, 646 F. Supp. 393, 398 (E.D.N.Y. 1986).

"[T]he status quo which deserves protection under [section] 10(j) is not the illegal status quo which has come into being as a result of the unfair labor practices being litigated. Instead, section 10(j) was intended as a means of preserving or restoring the status quo as it existed before the onset of unfair labor practices." *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 38 (1975).

Respondent's opposition to the injunction rests on petitioner's delay in seeking section 10(j) relief and its contention that an injunction would cause irreparable harm to itself and the employee it hired to replace Shikarchy.

**1. Unreasonable Delay**

Respondent argues that the status quo cannot be restored because of the passage of time—roughly eleven months—between the Union's initial charge in this matter and the Regional Director's petition. This position is not persuasive.

Congress enacted section 10(j) in part to address "the relatively slow procedure of [the] Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals." Senate Report No. 105, 80th Cong., 1st Sess., 8 (1947), cited in I NLRB, Legislative History of the Labor Management Relations Act, 1947, 414 (1948). It designed section 10(j) relief to preclude "persons violating the act to accomplish their unlawful objective before being placed under any legal restraint." *Id. See also Pascarell v. Vibra Screw, Inc.*, 904 F.2d 874, 878-79 (3d Cir. 1980) (theory behind section 10(j) injunction "is that the chilling effect of management retaliation may outlast the curative effects of any remedial action the Board might take including reinstating illegally discharged workers").

The Board's position is difficult because of a shortage of personnel and a hearing backlog. Its delay should not be visited on employees whom section 10(j) protects.

Involved in this case is a protracted dispute between parties with entrenched litigation positions. The relevant timeline is not unusual for labor disputes. Faced with a gap of nearly eight months between a union complaint and the filing of a section 10(j) petition, the court in *Hoffman v. Parksite Group*, 596 F. Supp. 2d 416 (D. Conn. 2009), found "no basis upon which [it] can conclude that petitioner has not diligently pursued its claims against [respondent] at both the administrative and district court level." *Id.* at 425. In *Hoffman* and the instant case, "[b]oth the union and the petitioner have consistently pursued unfair labor practices against [management]" since the inception of such grievances. *Id. See also Blyer ex rel. N.L.R.B. v. P&W Elec., Inc.*, 141 F. Supp. 2d 326 (E.D.N.Y. 2001) (seven month delay between charge and filing of section 10(j) "not excessive given the amount of time necessary to investigate the charges. . . .").

Delay may, but need not, provide a basis for denying a section 10(j) petition where the harm has already occurred and the status quo cannot be restored. *See, e.g.*, *Blyer ex rel N.L.R.B. v. Pratt Towers, Inc.*, 124 F. Supp. 2d 136, 147 (E.D.N.Y. 2000) ("Delay, however, should not be taken into consideration unless between the alleged unfair labor practices and the filing of the petition circumstances have changed that affect the appropriateness of such relief."); *Gottfried ex rel. N.L.R.B. v. Frankel*, 818 F.2d 485, 495 (6th Cir. 1987) ("It is true that courts have held that delay is a permissible consideration in denying a section 10(j) petition, especially if the harm has already occurred and the parties cannot be returned to the status quo."); *Sharp ex rel N.L.R.B. v. Webco Indus., Inc.*, 225 F.3d 1130, 1136 (10th Cir. 2000) ("Although the amount of time that may elapse before the Board's actions can be considered unreasonable is, to a certain large

7

extent, case-specific, there is a certain leniency that the Board must be afforded, stemming from the deference to the Board that is built into the statutory scheme."). Delay that is outside the control of the protected workers should not excuse denial of section 10(j) relief. *See, e.g.*, *Dunbar ex rel. N.L.R.B. v. Carrier Corp.*, 66 F. Supp. 2d 346, 354 (N.D.N.Y. 1999) ("[I]t would not be appropriate to punish the employees for any delay by petitioner.").

Here, the Board's delay does not warrant denial of relief to the original employee, Union, and Board. To keep Shikarchy off the job is to strike at the heart of the Union's attempt to provide representation to its members and the fairness in labor negotiations that the Act is designed to provide. The relevant status quo is one in which Shikarchy is employed as the respondent's super. Respondent's delay in filling Shikarchy's position once it fired him, coupled with the relatively short period of time his replacement has held the job, suggests that reverting to the status quo in which Shikarchy serves as super will not substantially harm respondent. Evidence that Shikarchy was fired for not doing his work properly is not persuasive. *See, e.g.*, Admin. Decision 17 (finding proffered reasons for discipline and termination were pretextual).

**2. Irreparable Harm to Respondent and Its Current Employees**

The evidence developed before the ALJ and this court supports a finding that respondent's conduct continues to have an adverse effect on the Union's ability to negotiate a new contract with management. *See* Show Cause Tr. 47 (no employee has expressed an interest in attending negotiating sessions since Shikarchy's termination); Admin. Tr. 109-10 (Shikarchy served as employee representative at negotiating meetings). No showing has been made that the harm to appropriate negotiations is not continuing.

While it is true that Shikarchy, since his termination, has not been prevented from attending negotiating sessions between the Union and respondent, he is currently barred from the

8

Premises and limited in his capacity to communicate with and to influence his fellow union members. *See* Show Cause Tr. 36-27 (respondent has instructed its employees to call the police if Shikarchy appears at the building). A sufficient showing has been made that respondent's treatment of Shikarchy affects the rights of all members of the Union. Those members of the Union who remain employed by respondent may legitimately act under fear of reprisal should they take an active union role, as Shikarchy did. *See Kaynard ex rel. N.L.R.B. v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980) (discharge of two "active and open union supporters . . . . risked a serious adverse impact on employee interest in unionization"); *Eisenberg v. Wellington Hall Nursing Home*, 651 F.2d 902, 907 (3d Cir. 1981) (failure to reinstate terminated employees who were supporters of union undermines union's ability to represent all members during bargaining sessions). Substantial delay in keeping Shikarchy away from his position would serve to weaken the Union's bargaining position and continue to harm Shikarchy himself.

The fact that reinstatement of Shikarchy may require dismissal of a replacement does not require denial of injunctive relief. "[A]ny hardship that may be caused by the displacement of new employees is outweighed by the harm that will result if the union's organizational efforts are terminated prematurely." *P&W Elec., Inc.*, 141 F. Supp. 2d at 331 (the status quo following adverse labor practices would "chill, if not destroy the union's organizational efforts" and "reinstatement [was] necessary to preserve the status quo as it existed prior to respondent's unfair labor practices").

The issue of who shall occupy the super's apartment and what housing accommodations, if any, need to be supplied to Shikarchy is not now determined.

## IV. Conclusion

An order requiring respondent to reinstate Shikarchy as a super on the Premises is granted.

The parties shall submit a proposed order or differing orders promptly.

The order will be stayed for ten days from signing to permit an application to the Court of Appeals for the Second Circuit for a further stay or other relief, and to permit arrangements for reinstatement of Shikarchy.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: December 3, 2012
Brooklyn, New York